## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MONTANA
### BILLINGS DIVISION

| | | |
|---|---|---|
| JAMES MULCAHY, | ) | |
| | ) | Cause No.  CV-10-21-BLG-RFC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER DENYING MOTION |
| | ) | TO COMPEL ARBITRATION |
| NABORS WELL SERVICES CO., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff James Mulcahy filed the instant action for wrongful termination against his former employer, Defendant Nabors Well Services.  *Doc. 8.*  The suit was initially filed in Montana's Thirteenth Judicial District Court, Yellowstone County, but Nabors subsequently removed to this Court.  *Doc. 1.*

Presently before the Court is Nabors' Motion to Compel Arbitration.  *Doc. 4.* Nabors argues Mulcahy agreed to arbitrate all disputes with Nabors as a condition of his employment and that arbitration contracts are valid under Montana and federal law.  Mulcahy responds with two arguments: (1) his employment contract is ambiguous as to arbitration and therefore it must be construed against Nabors; and

(2) the arbitration provision is void because it was contained within a contract of adhesion and a waiver of his constitutional rights to a jury trail and to access the courts[1] was not within his reasonable contemplation when he signed the contracts. For the following reasons, the Court concludes that both of Mulcahy's arguments are persuasive.  Nabors' motion to compel arbitration must therefore be denied.

It is undisputed that when he applied for employment with Nabors in January of 2004, Mulcahy signed and initialed an "Application for Hourly and Daily Employment" ("the Application") providing:

> I acknowledge that a copy of the Company's Dispute Resolution
> Program ["DRP"] was available for my review at the location where I
> submitted this application.  I acknowledge and understand that I am
> required to adhere to the Dispute Resolution Program and its
> requirements for submission of all claims to a process that may include
> mediation and/or arbitration and that if I refuse to sign below that my
> application will not be considered for employment.  I further
> understand that my employment application submission with the
> Company constitutes my acceptance of the terms of this provision as a
> condition of my employment consideration.

*Doc. 5, Ex. C.*  Mulcahy does not recall being provided with a copy of the DRP at the time.  *Mulcahy Aff., ¶3; Ex. A. To Doc. 9.*

In addition, shortly after he was hired by Nabors, Mulcahy signed an

---

[1]In addition to the U.S. Constitution's Seventh Amendment preserving a the right to a jury trial in civil actions, Article II § 16 of the Montana Constitution guarantees access to the courts for full legal redress and Article II § 26 secures the right to jury trial in civil actions.

"Employee Acknowledgment Concerning Nabors Dispute Resolution Program"

("Employee Acknowledgment"):

> By my signature below, I acknowledge and understand that I am required to adhere to the Dispute Resolution Program and its requirement for submission of disputes to a process that may include mediation and/or arbitration. I further understand that my employment or continued employment with the Company constitutes my acceptance of the terms of this provision as a condition of my employment or continued employment.

*Doc. 5, Ex. B.*  Mulcahy asserts the Employee Acknowledgment was presented to him "on a take-it-or-leave-it basis" as a document that all Nabors' employees must sign and that there was no discussion about the significance of the Dispute Resolution Program ("DRP").  *Mulcahy Aff., ¶¶ 4,5.*

With respect to his first argument, Mulcahy notes that immediately preceding the acknowledgment quoted above, the Employee Acknowledgment also states that "nothing contained in the Employee Dispute Resolution Program is intended to violate or restrict any rights of employees guaranteed by state or federal laws." Further, the DRP itself advises that "[o]ther than as expressly provided, herein, or in the Rules, the substantive legal rights, remedies and defenses of all parties are preserved.  *DRP, ¶ 8.C, Doc. 5, Ex. A.*  Mulcahy argues these provisions are directly contrary to provisions in the DRP stating that all disputes not otherwise settled shall be resolved by binding arbitration.  Mulcahy also stresses that there is

3

no explanation as to how these conflicting provisions can be reconciled.  According to Mulcahy, his employment contract is therefore ambiguous as to arbitration because it susceptible to at least two reasonable but conflicting interpretations: (1) that it preserves a party's constitutional right to a jury trial and access to the Courts and (2), that it restricts that right by mandating binding arbitration.

In support, Mulcahy cites the recent Montana Supreme Court decision in *Riehl v. Camebridge Court GF, LLC,* 226 P.3d 581 (Mont. 2010).  In *Riehl,* the Court found that an arbitration provision in a nursing home contract was invalid and unenforceable because it was ambiguous as to whether the plaintiff agreed to waive her right to a jury trial.  226 P.3d at 587.  Noting that the presence of ambiguities within a contract is a question of law and that an ambiguity exists when the language of a contract as a whole is susceptible to two or more reasonable but conflicting meanings, the *Riehl* Court found that when the agreement was considered as a whole, it was ambiguous as to whether the plaintiff agreed to waive her right to access the courts:

> We agree with Riehl that the Agreement, as a whole, is ambiguous regarding the scope and applicability of the arbitration provision. Section 6.12, entitled "Legal rights," states that "[n]othing in this agreement shall construe any limit of Resident's or Owner's inalienable legal rights." Neither the Agreement itself, nor the laws of Montana or Oregon, specifically define the term "inalienable legal rights."

4

However, Section 8.10 states that the parties to the Agreement
"understand and acknowledge that, by entering into this binding
arbitration agreement, they are giving up and waiving their right to
have claims decided in a court of law before a judge and a jury." The
Agreement itself never explains how these two provisions are to be
reconciled. Section 8.10 informs the parties that they are "waiving"
their legal rights to access to the courts. Section 6.12 informs the
resident that "nothing in this agreement" limits any of their "inalienable
legal rights."

*Riehl,* 226 P.3d at 587.

Having concluded that the agreement was ambiguous, the next step was to

interpret the contract "most strongly" against the party who drafted it; this process

"involves determining a question of fact regarding the intent of the parties to the

contract." *Riehl,* 226 P.3d at 587 (internal quotations omitted).  In holding that the

arbitration provision was invalid because there was no "mutual intent" or "meeting

of the minds" between the parties as to arbitration, the Court noted that not only did

the plaintiff testify she had "no idea" she had waived her right to sue, but the

defendant had told Riehl that they "preferred" arbitration as opposed to requiring it.

*Riehl,* 226 P.3d at 588.

Nabors responds that a division of the Texas Court of Appeals has found the

DRP and the Employee Acknowledgment to be unambiguous and enforceable,

citing *Nabors Drilling USA, LP v. Carpenter*, 198 S.W.3d 240 (Tex. App. San

5

Antonio 2006).  Not only is the Court not required to follow the opinion of a Texas court applying Texas law, but *Carpenter* does not address the issue raised by Mulcahy and the *Riehl* opinion–that the provisions preserving all federal and state rights are contrary to the provisions requiring all disputes to be resolved by binding arbitration.

The only reference Nabors makes to *Riehl* is to argue that it is distinguishable because it does not address an arbitration agreement in an employment contract. Regardless, all of the recent Montana Supreme Court opinions on arbitration agreements employ the same line of reasoning and there is no indication that the principles within apply only to certain categories of arbitration agreements.  *See Riehl, supra*; *Kortum-Managhan v. Herbergers NBGL,* 204 P.3d 693 (Mont. 2009); *Iwen v. U.S. West Direct,* 977 P.2d 989, 994-95 (Mont. 1999); *Kloss v. Edward D. Jones & Co.*, 54 P.3d 1 (Mont. 2002).  Moreover, while Nabors is correct that the Montana Supreme Court has not expressly overruled *Vukasin v. D.A. Davidson & Co.,* 785 P.2d 713 (Mont. 1990) (upholding arbitration provision in employment contract), none of the issues raised by Mulcahy were addressed in that case and no recent Montana Supreme Court decisions cite *Vukasin*.  Nabors offers no other counterarguments.

6

*Riehl* instructs that the first question is whether the agreement as a whole is ambiguous regarding the scope and applicability of the arbitration provision. 226 P.3d at 587. After reviewing the contract documents as a whole, the Court agrees with Mulcahy that the employment contract purports to uphold the rights of employees guaranteed by state or federal laws at the same time it mandates that all disputes be resolved by binding arbitration. Moreover, there is no attempt to reconcile this contradiction. Accordingly, *Riehl* is not distinguishable and compels the conclusion that the contract at issue in this case is ambiguous as to arbitration.

The agreement must therefore be construed "most strongly" against Nabors. *Riehl,* 226 P.3d at 587. With respect to the factual inquiry as to the intent of the parties regarding to the arbitration provision, *Id.,* Mulcahy avers that based on language of the Employee Acknowledgment stating that "nothing contained in the [DRP] is intended to violate or restrict any rights of employees guaranteed by state or federal laws," he did not contemplate a waiver of his rights to sue. *Mulcahy Aff.,* ¶¶ *7,8*. Although this case is unlike *Riehl* in that Nabors did not tell Mulcahy that arbitration was the preferred forum for disputes rather than the mandatory forum, Mulcahy's sworn statement that he did not contemplate arbitration is sufficient proof that there was no mutual consent as to arbitration. Construing the agreement "most strongly" against Nabors, *Riehl,* 226 P.3d at 587, the arbitration provision is

7

unenforceable.

As to Mulcahy's second argument, the arbitration agreement is also unenforceable because it is contained within a contract of adhesion and a waiver of the right to sue was not within Mulcahy's reasonable expectations. Under Montana law, a contract of adhesion containing an arbitration provision will not be enforced against a weaker party if (1) arbitration is not within the party's reasonable expectations or (2) arbitration is within the party's expectations but it is unduly oppressive, unconscionable, or against public policy. *Iwen v. U.S. West Direct,* 977 P.2d 989, 994-95 (Mont. 1999).

A contract of adhesion arises when a party possessing superior bargaining power presents a standardized form contract to a party whose only choice is to accept or reject the contract with no opportunity to negotiate its terms. *Kortum-Managhan v. Herbergers NBGL,* 204 P.3d 693, 698 (Mont. 2009). Although Nabors has a heading in its reply brief stating that the DRP is not a contract of adhesion, it does not develop this argument. Rather, Nabors continues to argue that the Montana Supreme Court upheld an arbitration agreement twenty years ago in *Vukasin* and that courts in other jurisdictions routinely enforce arbitration agreements.

8

Mulcahy's affidavit states that when he was hired by Nabors Well Services in 2004, he was presented with the Application (*Doc. 5, Ex. C*) and told to sign it. *Mulcahy Aff., ¶ 3*; *Doc. 9, Ex, A.*  There was no negotiation of the terms of employment and the arbitration requirement was not mentioned.  *Id.*  Although he initialed a section of that document indicating a copy of the DRP was available for his review, he does not recall being shown a copy of the DRP or that it was available.  *Id.*  A short time later, Mulcahy was presented with the Employee Acknowledgment  on a "take-it-or-leave-it basis."  He was told it was a standard form that all Nabors employees were required to sign as a condition of employment. *Mulcahy Aff., ¶¶ 4-5.*  Again, Mulcahy avers that he was not told about the DRP, the arbitration requirement contained within it, and was not given an opportunity to negotiate its terms.  *Mulcahy Aff., ¶¶ 6.*

Although the DRP and associated documents clearly constitute a contract of adhesion, the arbitration provision is nonetheless valid unless arbitration was not within Mulcahy's reasonable expectations or (2) arbitration was within his expectations but it is unduly oppressive, unconscionable, or against public policy. *Iwen,* 977 P.2d at 994-95.  Mulcahy asserts he did not know accepting employment with Nabors meant he was waiving fundamental constitutional rights.   Under Montana law, the rights to trial by jury and access to the courts are fundamental

constitutional rights.  Although these rights can be waived, the waiver must be

knowing, intelligent, and voluntary.  *Kortum-Managhan,* 204 P.3d at 699.  Before a

fundamental right can be effectively waived, the person must personally consent to

the waiver after being advised of the consequences; "the contractual waiver of

fundamental constitutional rights must be deliberately and understandingly made."

*Id.* (internal quotations omitted).

When determining whether a waiver of fundamental right was deliberately

made, Montana courts consider the following factors:

> whether there were any actual negotiations over the waiver provision;
> whether the clause was included on a take-it-or-leave-it basis as part of
> a standard-form contract; whether the waiver clause was conspicuous
> and explained the consequences of the provision (e.g. waiver of the
> right to trial by jury and right of access to the courts); whether there
> was disparity in the bargaining power of the contracting parties;
> whether there was a difference in business experience and
> sophistication of the parties; whether the party charged with the waiver
> was represented by counsel at the time the agreement was executed;
> whether economic, social or practical duress compelled a party to
> execute the contract (e.g. where a consumer needs phone service and
> the only company or companies providing that service require
> execution of an adhesion contract with a binding arbitration clause
> before service will be extended); whether the agreement was actually
> signed or the waiver provision separately initialed; whether the waiver
> clause was ambiguous or misleading; and whether the party with the
> superior bargaining power lulled the inferior party into a belief that the
> waiver would not be enforced.

*Kortum-Managhan,* 204 P.3d at 699.

In addition to the facts cited in the contract of adhesion discussion above,

Mulcahy cites the following facts as relevant to these factors:

(1)    The arbitration clauses in the Employee Acknowledgment and DRP are inconspicious. The specific arbitration provisions do not contain bold typeface or underlined text. The arbitration provisions further fail to describe the fundamental liberties that Plaintiff was purportedly waiving by agreeing to be bound by the Employee Acknowledgment and DRP.

(2)    Plaintiff was an ordinary citizen, not represented by counsel, living and working in Dawson County, Montana and had nowhere near the resources, business experience or sophistication that Nabors, a large multinational corporation, had at its disposal.

(3)    Plaintiff did not initial or sign the DRP containing the arbitration clauses, but instead signed an Employee Acknowledgment consisting of conflicting and ambiguous terms.

(4)    By express language of the Employment Acknowledgment, Plaintiff was required to submit to the terms of the DRP as a condition of his employment with Nabors. Had Plaintiff refused to accept the terms of the documents presented to him, he would have been without employment. When he entered into the agreement, Plaintiff had no other source of income.

Only two factors even marginally weigh in favor of Nabors.  First, there is no

evidence Nabors represented the arbitration requirement would not be enforced.  In

fact, Mulcahy claims the arbitration requirement was never discussed.  Second,

there is no question that Mulcahy signed and initialed the Application and the

Employee Acknowledgment, both of which stated his agreement to the DRP.  *Doc. 5, Exs. B & C.*  Neither of these documents, however, and the same is true of the DRP itself, ever mention that agreeing to the DRP means waiving the right to redress wrongs through the judicial system.  Finally, as discussed above, the Employee Acknowledgment is contradictory, stating both that the DRP is not intended to violate or restrict any rights guaranteed by law *and* that all disputes must be mediated or arbitrated.

Nabors does not discuss these factors, but continues its reliance on *Vukasin* and out-of- state decisions upholding arbitration agreements in employment contracts.

Considering that none of the contract documents inform Mulcahy that agreeing to the DRP means he is waiving his right to resolve disputes in a court of law, the Court cannot conclude the waiver was deliberately and understandingly made.  Almost every factor identified by *Kortum-Managhan* supports this conclusion.

For those reasons, **IT IS HEREBY ORDERED** that Nabors' Motion to Compel Arbitration (*Doc. 4*) is **DENIED**.

///

Dated this 7th  day of May 2010.

/s/ Richard F. Cebull_____

Richard F. Cebull
United States District Judge